UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE CUPP,

    Plaintiff,                                 Civil Action No. 07-13701

v.                                         HON. DENISE PAGE HOOD
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jamie Cupp brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On January 28, 2004, Plaintiff filed an application for DIB, alleging disability as of June 9, 2002 (Tr. 54). After the initial denial of her claim, Plaintiff requested an

administrative hearing, conducted on January 22, 2007 in Port Huron, Michigan before Administrative Law Judge ("ALJ") Lubomyre Jacknycky (Tr. 161). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Samuel Goldstein (Tr. 162-185, 186-190). On March 26, 2007, ALJ Jacknycky found that although Plaintiff was unable to perform any of her past relevant work, she retained the capacity for a significant range of sedentary work (Tr. 21). On July 18, 2007, the Appeals Council denied review (Tr. 3-7). Plaintiff filed for judicial review of the final decision on September 4, 2007.

## **BACKGROUND FACTS**

Plaintiff, born April 14, 1971, was 35 when the ALJ issued his decision (Tr. 22, 54). She completed two years of college and worked previously as a cashier and secretary (Tr. 80, 84). She alleges disability as a result of a back injury (Tr. 79).

### A. Plaintiff's Testimony

Plaintiff testified that she was currently receiving $948 a month in long-term disability (Tr. 162). She estimated that she drove twice a week, stating that her van did not have a handicap sticker (Tr. 163). She denied problems either reading or writing, reporting that she had received an Associates degree (Tr. 163).

Plaintiff stated that she last worked full-time in June 2002 as a mortgage loan clerk with a brief, unsuccessful work attempt in August 2002 (Tr. 163-164). She reported that on a typical day, she arose at approximately 7:10 a.m., to help her two older children prepare for school, adding that her children were 14, 10, 22 months, and six weeks (Tr. 164).

Plaintiff, unmarried, testified that she was their primary care giver (Tr. 164, 166, 167). She stated that physical limitations slowed but did not prevent her ability to perform household tasks (Tr. 165).

Plaintiff testified that she sustained a disabling back injury in February 2002 when attempting to move her office desk and that a Workers' Compensation case had been settled two years before the hearing (Tr. 167). She reported both back and neck pain, indicating that her lower back pain was constant (Tr. 168). She stated that at the times her back went "out," she was forced to "do nothing" for the next two weeks (Tr. 168-169). Plaintiff testified that she also experienced migraines four times a year (Tr. 169). She reported that she had also been treated for a thyroid disorder and fibromyalgia (Tr. 170).

Plaintiff estimated that she could sit or stand for up to 45 minutes and walk for a maximum of three blocks (Tr. 173). She reported difficulty lifting her 22-pound daughter, adding that overhead reaching created pain (Tr. 173). She indicated that three to four times a year she experienced level "11" pain on a scale of one to 10 but regularly experienced level three to six pain (Tr. 175). Plaintiff testified that she currently took only over-the-counter Tylenol for pain relief (Tr. 177).

Plaintiff reported additionally that back pain created problems sleeping, stating that she coped with back pain during the day by reclining (Tr. 178). She indicated that her infant daughter's sleeping schedule dictated the frequency and length of her naps (Tr. 179). She alleged that thyroid problems, diagnosed in September 2005, made her irritable and tired (Tr. 179-180). She stated that she coped with increased fatigue in her last months of her recent

pregnancy by relying on her current fiancé and mother for help (Tr. 180-181). Plaintiff acknowledged that she had driven herself to the hearing (Tr. 182). She stated that she possessed a cane, but avoided using it (Tr. 183). She testified that she used a TENS unit only when her back pain became severe (Tr. 184). She indicated that she participated in pool therapy on a sporadic basis only (Tr. 184).

    **B.    Medical Evidence**

    **1. Treating Sources**

In August 2002, Randy L. Gehring, M.D., evaluated Plaintiff for back pain following her February 2002 injury (Tr. 136). Plaintiff reported feeling "90 to 95% better" (Tr. 136). Noting that an MRI study showed lumbar disc dehydration, Dr. Gehring noted 5/5 strength and heel and toe walking without difficulty (Tr. 137). He recommended physical therapy and completed a "return-to-work" slip (Tr. 138). In October 2002, Dr. Gehring, reporting that an August 2002 work attempt had been unsuccessful, opined that "I think that there is no way that she can return . . . to work at this time" (Tr. 134). He noted that "[i]t is very difficult to explain her current situation based on her MRI findings," observing that her level of discomfort with movement was "very mild" (Tr. 134). The same month, a CT scan of Plaintiff's cervical spine showed essentially normal results (Tr. 123). At a December 2002 examination, Dr. Gehring observed again that "it is difficult to explain all of her symptoms based on her lumbar pathology," stating that "there may well be some component of fibromyalgia in this picture" (Tr. 132). He found nonetheless that "no way at this point" could she return to work (Tr. 132). In May 2003, he noted that Plaintiff moved "easily in and

out of the chair" with 5/5 strength (Tr. 130). In August 2003, Dr. Gehring, again noting that Plaintiff "will need to remain off of work at this point," noted that a recent MRI showed results "virtually identical to a June 2002 study" (Tr. 90, 128). November 2003 treating notes show similar results (Tr. 127). In April 2004, he noted that Plaintiff experienced "a lot of soft tissue tenderness," opining that he did "not see any way at this point for her to return back to work," and that "[h]opefully, her Workman's Compensation situation will be settled" (Tr. 126). In July 2005, Dr. Gehring, opining that Plaintiff's soft tissue tenderness was a "fibromyalgia type condition," stated that he believed "a pain clinic or a work-hardening program" would not work (Tr. 152). A September 2005 ultrasound of the thyroid was negative for malignancy (Tr. 155).

### 2. Consultive and Non-Examining Sources

In June 2004, R. Scott Lazzara, M.D., performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 140-143). Observing Plaintiff's history of degenerative disc disease at L3-S1 after sustaining a workplace accident, he noted that Plaintiff currently took Bextra and engaged in pool and heat therapies (Tr. 140). Plaintiff reported that she continued to drive and perform daily living activities, but denied yard work or bicycling (Tr. 140). She alleged that she could sit for one hour, stand for 15 minutes, and walk a maximum of a block (Tr. 140). Plaintiff appeared to be in mild discomfort but exhibited good concentration (Tr. 141). Dr. Lazzara noted that MRI studies showed "multilevel degenerative disc disease," but no evidence of "nerve root irritation or radicular symptoms," opining that "[h]er pain appears

to have a significant myofascial component and is alleviated with hydrotherapy and heat" (Tr. 142).

A July 2004 Physical Residual Functional Capacity Assessment based on Plaintiff's treating and consultive records found that she could lift 20 pounds occasionally, ten pounds frequently, and stand, walk, or sit for about six hours in an eight-hour workday (Tr. 145). The Assessment found further that Plaintiff experienced limitations in pushing and pulling with the lower extremities (Tr. 146). She was further limited to occasional climbing of ladders, ropes, and scaffolds as well as frequent (as opposed to constant) climbing of ramps and stairs, balancing, stooping, and kneeling (Tr. 146). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations, concluding that Plaintiff's consultive examination showed only a "mild reduction" in range of motion ("ROM") with normal ambulation and posture (Tr. 149).

### C. Vocational Expert Testimony

VE Samuel Goldstein testified that Plaintiff worked formerly as a secretary clerk, assembler, school secretary, and grocery store cashier (Tr. 88, 186). The ALJ posed the following question to the VE assuming Plaintiff's age, education, and work experience:

> "[S]he has a disorder of the lumbar and cervical spine. She also has migraine headaches. She indicated that she has fibromyalgia and also thyroid problem[s] and she also has a history of a left shoulder surgery when she was 13 . . . She also indicates that she has a [TENS] unit[] that she uses on an occasional basis. And in terms of medications, she's currently basically taking over-the-counter Tylenol extra strength. She indicated that she is not using other medications due to her breast feeding a one-month-old child. And she also indicates that prior to breast feeding that she also used to use a pain patch.

> She's used one, she [has] been using them since but on a somewhat infrequent basis. And she indicated that in terms of significant adverse side effects from those medications that there are none, even though she really hasn't been using the pain patch for that reason, is to make sure . . . it would not her being able to breast feed her child. And she has further limit[ation] in the following respects. With respect to lifting-carrying, that would be limited to a maximum of ten pounds, and that only on an occasional basis. She could sit for approximately six hours out of an eight-hour day. However in terms of standing and walking she would be limited to only two hours [in] an eight-hour day. With respect to bending and squatting, she could do that only on an occasional basis. She could do no work involving crouching or kneeling, climbing stairs or reaching above shoulder level. Also she could do no power gripping or firm grasping with either of her upper extremities. I should note she is right-handed and she can do simple grasping and fine manipulation. And lastly, because of the problems that she has with pain, she would have to be limited to jobs entailing no more than simple routine work. Based on these limitations, can the person do her past work ?"

(Tr. 187-188). The VE replied that although Plaintiff would be unable to perform any of her past jobs, she could perform the unskilled, sedentary jobs of simple bench assembly (7,000 to 8,000 in the regional economy), bench inspector (2,500), and bench packager (4,000)[1] (Tr. 188). The VE testified that if Plaintiff's allegations of up to level 10 pain and the need to nap on a daily basis were fully credited, she would be unable to perform any work (Tr. 189).

**D.     The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Jacknycky found that Plaintiff experienced

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

the severe impairments of a disorder of the lumbar spine; migraine headaches; fibromyalgia; thyroid disorder; history of left shoulder surgery; and the use of a TENS unit, but that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ found that Plaintiff retained the residual functional capacity ("RFC"):

> "To lift 10 pounds occasionally; sit for 6 of 8 hours; stand/walk for 2 of 8 hours; occasional bending and squatting; no crouching, kneeling, climbing stairs or reaching above shoulder level; no power gripping. She is right-handed and can do simple grasping and fine manipulation. Limited to simple, routine work."

(Tr. 16). The ALJ, adopting the VE's job numbers, *supra*, found that Plaintiff could perform the sedentary, unskilled work of a bench assembler, inspector, and packager (Tr. 21).

The ALJ, acknowledging that Plaintiff's "medically determinable impairments could have been reasonably expected to product the alleged symptoms," found nonetheless that her allegations "concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely credible" (Tr. 18). He noted that although Plaintiff alleged disability, she continued to cook, shop, pay bills, handle a savings account, and act as the primary care giver to her young children (Tr. 19). In support of his credibility determination, he also observed that Plaintiff, refusing epidural steroids, had received only the conservative treatment of over-the-counter medication and pool therapy (Tr. 19-20).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff argues that the ALJ's hypothetical question failed to account for her full degree of limitation, thus tainting the VE's job findings and the ultimate non-disability determination. *Docket #7*, *Plaintiff's Brief* at 6-8. She makes intertwining arguments that the ALJ impermissibly discounted Dr. Gehring's findings and her own allegations of limitation. *Id*. at 8-14, 14-17.

Determination of the hypothetical question's sufficiency depends in large part on whether the ALJ was entitled to reject Dr. Gehring's opinion and Plaintiff's own claim of disability. Hence, the Court will address the ALJ's treating physician and credibility analyses before considering Plaintiff's hypothetical question argument.

### A. The Treating Physician Analysis

Plaintiff argues that the ALJ erred in discounting Dr. Gehring's finding that she was

unable to work. *Plaintiff's Brief* at 14. Citing 20 C.F.R. §1527(d)(2) and SSR 96-8, she contends that the ALJ failed explain his reasons for rejecting the treating physician's opinion. *Plaintiff's Brief* at 14-18.

"If uncontradicted, the [treating] physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). Further,

> "[i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

*Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). Regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion:

> "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544 (*citing Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)).

Contrary to Plaintiff's argument, the ALJ's rejection of Dr. Gehring's opinion was both procedurally and substantively sound. First, Plaintiff's argument that the ALJ skirted

SSR regulations by failing to provide "good reasons" for the rejection is belied by the ALJ's page-long administrative discussion of his reasons for discounting Dr. Gehring's findings (Tr. 19-20).

In conformance with *Wilson*, the ALJ acknowledged the length, nature, and frequency of the treating relationship, citing the physician's findings from November, 2002 to July, 2005 (Tr. 19-20). However, the ALJ, noting that he was not bound to adopt the treating physician's opinion in light of "substantial medical evidence to the contrary" such as a normal CT scan, found that Dr. Gehring's disability pronouncements stood at odds with his own conservative treatment and Plaintiff's acknowledgment that she continued to shop, cook, clean, and care for two small children (Tr. 20, 123) *(citing Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284 (6th Cir. 1994)).

More obviously, Dr. Gehring's disability opinions in large part contradict his own findings, such as his December, 2002 observation that Plaintiff's allegations of disabling back pain stood unsupported by objective testing (Tr. 132). Although on this and other occasions the physician opined that Plaintiff's soft tissue tenderness could be associated with a "fibromyalgia type condition," his comment is unaccompanied by any evidence that he performed diagnostic tests for fibromyalgia, as could be expected, given his acknowledgment that Plaintiff's complaints were unsupported by imaging studies (Tr. 123, 126, 132, 134, 152). Further, Dr. Gehring stated numerous times that he believed Plaintiff was unable to work, it is unclear whether he was referring to all work or specifically to her most recent job.

October 2002 treating notes indicating that a recent work attempt had been unsuccessful suggest the latter interpretation, stating in reference to her former bank job that "she did not appreciate the stress in the back with things such as lifting the money drawers and the files" (Tr. 134). Accordingly, the ALJ's rejection of the treating physician's opinion, amply supported by record evidence, does not present grounds for remand.

### B. Credibility

For overlapping reasons, I find no error in the ALJ's credibility analysis or his conclusion that Plaintiff's allegations were "not entirely credible" (Tr. 18). The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."

As a rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401. An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927

(7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986). However, an ALJ's decision must contain specific reasons for the findings of credibility, supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001).

Substantial evidence supports the ALJ's credibility determination. Moreover, the credibility analysis conforms to the procedural requirements of SSR 96-7p. As found by the ALJ, Plaintiff's allegation that she is unable to perform any gainful employment stands at odds with medical records showing a "near normal" range of motion and a normal gait (Tr. 19). Further, the ALJ noted that Plaintiff's medication was limited to Tylenol, permissibly finding that the absence of aggressive treatment undermined her claim (Tr. 19). While Plaintiff, a nursing mother, reasonably testified that she eschewed pain patches because of concerns that the substances would be passed on to her infants (presumably also explaining her refusal to receive epidural injections), her claim for benefits is nonetheless undermined by her acknowledgment that she walked without an assistive device, drove regularly, shopped, and managed the financial and household affairs for herself and four children without substantial assistance (Tr. 63, 64, 165, 177, 183). Although Plaintiff now argues that she completed her household responsibilities only with the help of her mother and present fiancé, her testimony suggests that she relied on these individuals in the later months of her most recent pregnancy, rather than on a consistent basis (Tr. 180-181). Even assuming that she continues to experienced some degree of limitation, her admitted level of functioning

confirms the ALJ's conclusion that she is capable of performing a range of sedentary work.

### C. Hypothetical Limitations

Plaintiff argues that the ALJ's omission of the need for daily naps from his hypothetical limitations taints the VE's job findings. *Plaintiff's Brief* at 8. She argues that her need to nap once or twice daily directs a disability conclusion. *Id. citing* Tr. 189.

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). More recently, *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir. 2004) rejected the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledging that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 (*citing Varley, supra,* 820 F.2d at 779). *See also, Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

Plaintiff's argument fails for two reasons. She presently argues that her "need" to nap or recline at least once a day was impermissibly omitted from the hypothetical question. *Plaintiff's Brief* at 8. However, Plaintiff testified at hearing that her nap schedule was "based on Catherine," indicating that she slept in shifts in an attempt to conform her sleeping schedule to the needs of her newborn, rather than because of a medical condition or side effects (Tr. 179). Similarly, Plaintiff's alleged testimony that she needed to recline

"frequently" does not address the alleged duration or frequency of her non-sleeping rests, skirting her attorney's question of whether they were "five, ten minutes, 15 minutes" by answering somewhat unresponsively "[e]ven if it's just on the couch so I can keep an eye on [her newborn] (Tr. 179). Plaintiff's testimony, unlike her present argument for remand, does not clearly indicate whether she actually needed to recline or simply a position change to relieve back pain.

More obviously, even assuming that Plaintiff actually alleged a need for multiple naps and other periods of supination on a daily basis, the ALJ aptly noted that these claims "were not well supported by the objective medical evidence" (Tr. 20). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987). Plaintiff's present claim that her activities were severely compromised by the need for multiple naps and other rest periods every day stands at odds with her disinclination for more aggressive treatment and her apparent ongoing ability to meet the care needs of her four minor children[2]

This Court notes in closing that its conclusion recommending the grant of summary judgment to the Commissioner in this matter should neither be interpreted to pass judgment on Plaintiff's entitlement to long-term disability benefits through her employer nor trivialize her legitimate complaints as a result of the above-discussed conditions. However, the

---

[2]Plaintiff's two youngest children were born following her alleged onset of disability date.

overriding question in this appeal is whether the Commissioner's decision was supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response

shall address specifically, and in the same order raised, each issue contained within the objections.

                        S/R. Steven Whalen  
                        R. STEVEN WHALEN  
                        UNITED STATES MAGISTRATE JUDGE

Dated: June 4, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 4, 2008.

                        S/Gina Wilson  
                        Judicial Assistant